MONSERRATE V. DE SEGARRA ET UX., Plaintiffs and Appellants,
  v. ANTONIO VIVALDI PACHECO, Defendant and Appellee.

No. 8342. Argued December 19, 1941.—Decided January 27, 1942.

798

*Mario Báez García* for appellants.    *Oscar Souffront* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Monserrate V. de Segarra and Antonio Vivaldi entered into a contract whereby the latter promised to sell to the former a certain urban property consisting of a house and lot located on the Mayagüez–Añasco Highway at a place known as Urbanización Vivaldi. The contract contained among others, the following terms: (a) the purchase price agreed upon was $2,475, of which the vendor received $300 in cash on the execution of the contract, the balance of $2,175 to be paid in $40 instalments payable at the end of every month beginning on the 1st of May, 1928; (b) interest at the rate of 1 per cent per month would be paid on the balance due, such interest to be deducted from the monthly instalment and the balance thereof to be credited to the principal sum due; (c) the nonperformance of the terms of the contract by either of the parties would be ground for the rescission thereof, and in such case the defaulting party should pay to the other $500 as indemnity, said sum not to include any amount due by the purchaser on account of interest at the time of the rescission; (d) the purchaser was to take possession of the immovable upon the signing of the contract, and the vendor bound himself to convey to her the title to the property on the purchase price being fully paid.

Pursuant to the contract, the plaintiff took possession of the immovable and continued in possession thereof until September 19, 1930, when, on her moving to San Juan, the defendant resumed possession of the same. On June 28, 1937, the plaintiff brought this action for damages, which she alleged to have sustained by reason of the nonperformance by the defendant of the agreement to sell.

The action was brought by "Monserrate V. de Segarra, assisted by her husband Antonio Segarra," and as a cause of action, after setting forth the above facts, the complaint alleged: That the plaintiff had paid the $300 which she undertook to pay upon the execution of the contract, as well as the monthly instalments accrued from May 1928, to

September 1930, inclusive, amounting to $1,120; that when she moved to San Juan she left the keys of the house with Ramón Trabal with instructions to let out the house in her behalf and apply the rent, together with any money that she might remit, to the payment of any monthly instalments that might become due pending the extinction of the obligation; that shortly after the plaintiff moved to San Juan the defendant requested Trabal to deliver the keys to him on the pretext that he was going to build a garage on the premises, and that ever since he has refused to relinquish possession of the house to the plaintiff, notwithstanding her demands, the defendant having leased the same to various persons and appropriated to himself the rents thereof; that during the time the plaintiff was in possession of the house she made thereon necessary repairs at her own expense, with the knowledge and consent of the defendant; that the latter refused to comply with the terms of the contract, thus causing its rescission, and on being required by the plaintiffs to pay the indemnity agreed upon, he put off such payment for some time, postponing also the refund of the money paid by the plaintiffs, and that on May 14, 1937, he absolutely refused to further perform the terms of the contract or to pay the indemnity or to return the cash received. It was further alleged that, in consequence of said acts on the part of the defendant, the plaintiffs have suffered in damages which they assess at $2,845, and which they itemized in the complaint. The latter ended with a prayer for judgment for $2,845 plus interest thereon at the legal rate from the filing of the complaint, together with costs, disbursements, and attorney's fees.

The defendant in his answer denied having violated the contract and alleged, in short, that the plaintiff had only paid in instalments the sum of $452.50; that ever since the month of October she had failed to pay the monthly instalments agreed upon, and that notwithstanding this, she continued to occupy the house until September 19, 1930, when

she called the defendant and told him that she was unable to go on with the contract, and then the plaintiff and the defendant agreed upon the return of the house to the defendant in consideration of the payment by the defendant of a certain sum of money to the plaintiff for her to move to San Juan, which she did, and for the payment of certain debts owed by the plaintiff and her son; that the defendant had the proper contract of rescission drawn up and the plaintiff promised to sign the same before leaving Mayagüez, but this was not done because when the defendant, accompanied by a notary, called at the plaintiff's house for the signing of the instrument, the plaintiff had left for San Juan and commissioned Trabal to deliver the keys of the house to the defendant. This was done by Trabal.

The case went on to trial and the judgment appealed from was rendered, dismissing the complaint and adjudging the plaintiff to pay the costs and $100 as attorney's fees.

The judgment is predicated, in the first place, on the fact that the amount claimed as damages, if recovered, would belong to the conjugal partnership and the action, therefore, should have been brought in the name of the husband, and as this was not done in the instant case, in accordance with the decision in *Vázquez* v. *Valdés,* 28 P.R.R. 431, the plaintiff was not entitled to bring the action; and, in the second place, on the failure to prove the essential facts of the complaint.

The plaintiffs-appellants in their brief assign eleven errors. The first seven assignments relate to the admission of evidence; the eighth and ninth to the holding by the lower court that the action should have been brought by the conjugal partnership and that the wife had no capacity to sue; the tenth to the taxing of costs against the plaintiff; and the eleventh to the weighing of the evidence.

▬▬▬ In view of the nature of the errors assigned, it is well to take up first the eighth and ninth assignments for, if it should be found that the amount claimed is community property, and that the action has been brought by the wife

alone and not by the husband as the administrator of the conjugal partnership, the former would lack legal capacity to sue and it would be' unnecessary to consider the remaining errors.

As appears from the facts above stated, the contract in question involves the right to purchase an immovable, without there being any showing that the purchase price was to be paid out of the wife's separate estate, in which case application lies of the provisions of Section 1307 of the Civil Code to the effect that "all the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife." It has been repeatedly held by this court that although the wife by herself can not dispose of, or encumber community property, yet there is nothing to prevent her from acquiring property in behalf of the community, and the failure of the husband to join in the execution of the deed whereby the immovable is purchased can not even be held to be a curable defect. *Fuster* v. *Paonesa,* 43 P.R.R. 729; *E. Solé & Co.* v. *Sepúlveda,* 41 P.R.R. 807.

That being so, the defendant is not estopped in any way from alleging that an interest so acquired is community property.

██ If the right to acquire an immovable, the purchaser having performed all the terms of the contract of sale, is a right not belonging separately to either of the spouses but to the conjugal partnership, it is evident that any damages that might be recovered for the deprivation of such right constitute community property. Therefore, where the property claimed is community property, the action must be prosecuted by the conjugal partnership, and, as according to Section 1312 of the Civil Code, the husband is the administrator thereof, it is incumbent on the latter as such administrator and not on the wife to bring the action.

The case of *Vázquez* v. *Valdés, supra,* cited by the trial court, was an action to recover damages for personal injuries

sustained by the wife. The action was brought by the latter, assisted by her husband, and after it was held that the action must be brought by the conjugal partnership, the judgment dismissing the complaint was affirmed on the ground that it appeared from the wording of the complaint that the action had been brought for the benefit of the wife and not in favor of the conjugal partnership.

Now, are the attendant circumstances of the present case similar to those which served as a basis for this court's holding in *Vázquez* v. *Valdés, supra,* that the action brought was for the exclusive benefit of the wife and not in favor of the conjugal partnership, which was the party actually entitled to bring the action?

If we stop to consider the allegations of the complaint herein, we will see at once that the action brought by the wife, assisted by her husband, has been exercised for the benefit of the conjugal partnership and not for that of the wife, as happened in the case of *Vázquez* v. *Valdés, supra.* The complaint is entitled "Monserrate V. de Segarra, assisted by her husband Antonio Segarra," and in the seventh paragraph thereof it is alleged that *"the plaintiffs always complied with all the terms' of the contract* and requested the defendant to do likewise"; in the eleventh paragraph, that "in consequence of the acts of the defendant, *the plaintiffs have sustained damages"* which they at once proceed to specify, and, finally, it is prayed "that the defendant be adjudged *to pay to the plaintiffs* the sum of $2,845 claimed in the complaint...."

We think it is clear that the action has been brought, not for the exclusive benefit of the wife, but for that of the conjugal partnership.

Having reached the above conclusion, it remains for us to determine whether in the instant case the action has been brought by the husband as required by Section 1312 of the Civil Code. We think so. As the suit was brought by the wife assisted by her husband Antonio Segarra, the latter is

a party to the same. *"Asistir,"* as defined by the *Diccionario de la Lengua Castellana de la Real Academia Española,* 14th ed., and the *Diccionario Enciclopédico Hispanoamericano,* means "to accompany somebody in a public act; to aid; to be present." *"Asistencia,"* according to Escriche, *"Diccionario de Legislación y Jurisprudencia,"* is "the act of assisting or *the actual presence."* So that when it is stated that the wife is assisted by her husband it is clearly meant that the latter is present, that he has personally appeared in the case, and that, jointly with the wife, he prays for the relief demanded in the complaint. This is why in deeds for the sale or encumbrance of real property of the conjugal partnership, which indispensably require the express consent of both spouses, the husband often appears "assisted by this wife," and it has always been held that the appearance of the wife in this form is sufficient. Therefore, in the present case it could properly be said that the appearance of the wife is surplusage and, this being so, such appearance might be disregarded, leaving that of the husband who, as the administrator of the conjugal partnership, is entitled to represent the latter in the action.

From what has been said we conclude that, although there is involved a claim for property belonging to the conjugal partnership, the action has been brought by the husband and consequently the trial court erred in sustaining the demurrer to the complaint. This conclusion compels us to take up the consideration of the other errors assigned by the appellants. The first seven errors refer to the admission in evidence of the following: (1) the original statement of account which the defendant alleged to have delivered to the plaintiff; (2) a receipt subscribed by José Rafols Roger which appears at the foot of a conditional sale contract entered into between the latter and Carlos L. Segarra, a son of the appellants; (3) an undated instrument subscribed by the plaintiff; (4) a promissory note for $15 subscribed by plaintiff Antonio Segarra in favor of the

defendant; (5) the answers of the defendant to questions put to him regarding transactions between third persons not privies to the present contract; (6) a tax receipt for the second semester from January 1 to June 30, 1930, which was not duly identified; and (7) receipt stubs prepared and kept by the defendant.

From the answer filed by the defendant and the evidence introduced by him, his position in this action clearly appears, which is to rebut the assertion made by the plaintiff to the effect that notwithstanding her having fulfilled all her con-tractual obligations, the defendant failed to discharge his, by unlawfully taking possession of the immovable without the consent and behind the back of the plaintiff. The evidence objected to and mentioned in the seven assignments of error tends to corroborate the statement of the defendant.

The statement of account referred to in the first assignment is the liquidation which, according to the testimony of the defendant, the latter prepared at the request of the plaintiff to whom it was delivered on September 15, 1930, to serve as the basis of the agreement for rescission. This paper was produced by the plaintiff herself at the request of the defendant, and although she testified to having received the same in 1931 through her then counsel, Attorney Llorens Torres, the defendant testified that he had handed it to her personally on September 15, 1930, which is the same date shown on the document and very close to the time when the contract of rescission was expected to be signed.

The receipt mentioned in the second assignment of error is one subscribed by José Rafols Roger at the foot of a contract of conditional sale entered into between him and plaintiff's son, and tends to show that the defendant paid the account of plaintiff's son pursuant to the contract of rescission.

The undated document giving rise to the third assignment of error appears subscribed by the plaintiff, who admitted

to have subscribed the same and is connected with the rescission alleged by the defendant.

The note for $15 subscribed by plaintiff's husband in favor of the defendant, which is the subject of the fourth assignment, appears to be connected with the aforesaid liquidation and tends to show its genuineness.

The evidence referred to in the fifth assignment is the testimony of the defendant to the effect that he had paid a debt owing by plaintiff's son, Carlos L. Segarra, to Francisca Albino, in conformity with the agreement made with the plaintiff.

The tax receipt mentioned in the sixth assignment was admitted in order to show that the defendant had paid the taxes on the house for the account of the plaintiff, the immovable being sufficiently identified, and, lastly, the receipt stubs referred to in the seventh assignment, were introduced in order to show that the last payment effected by the plaintiff pursuant to the contract to sell was made on September 6, 1929, and this corroborates the statement made by the defendant that when the house was delivered to him, the plaintiff had defaulted in the payment of the $40 monthly instalments for almost a year.

All the above evidence was properly admitted; but even assuming that any of those documents were not admissible, the error involved would not carry with it a reversal of the judgment; for, independently of that evidence, there would still remain the testimony of the defendant which was fully believed by the trial court. Moreover, if the testimony of the defendant be disregarded, the remaining portion of the evidence does not support the allegations of the complaint.

The witness Trabal, whom the plaintiff refused to call to testify, giving as a pretext his work with the firm of Smallwood Brothers, and whom the plaintiff stated to have entrusted with the administration of the house, the collection of the rent from it, and the payment of the monthly instal-

ments out of the proceeds of such rent and of any remittance that she might make, when examined by the defendant, denied having been so entrusted and on the contrary testified that the plaintiff had commissioned him, through his mother, to deliver possesion of the house to the defendant after removing plaintiff's furniture. This testimony not only disproves the statements of the plaintiff but strongly corroborates those of the defendant.

To what has been said we have little to add regarding the eleventh assignment which relates to the weighing of the evidence. It will suffice to say that the same was conflicting and that the court, quite properly, did not accord any credit to the evidence of the plaintiff and, on the contrary, believed that of the defendant, and in view of the attendant circumstances of the case, we could not in any way disturb its finding.

It would seem advisable to state here that we should not be understood as holding that the contract of rescission referred to in the evidence for the defendant, and which was entered into but not subscribed by the wife with her husband's consent, is valid. Such transaction only tends to contradict plaintiffs' allegation that the defendant had failed to perform the contract to sell, by taking possession of the house without the consent and behind the back of the plaintiff.

Lastly, the tenth assignment refers to the imposition of costs on the plaintiff. Section 327 of the Code of Civil Procedure, as amended first by Act No. 69 of 1936 (Session Laws, p. 352) and then by Act No. 94 of 1937 (Laws of 1936–37, p. 229), provides that "the party in whose favor any final judgment or resolution is rendered shall be allowed costs." As the judgment in this case was rendered on December 15, 1939, subsequent to the amendment of the above section, it was mandatory for the judge below to award costs against the plaintiffs, and in view of the manifest obstinacy

of the latter, we do not doubt that he properly used his discretion in adjudging them to pay $100 as attorney's fees of the defendant.

Mr. Justice Snyder took no part in the decision of this case.